United States District Court

Eastern District of California

United States of America,

        Plaintiff,               No. Cr. S 92-0315 GEB PAN P

   vs.                      Findings and Recommendations

Charles D. Matlock,

        Defendant.

-oOo-

    This case is before the court on defendant's June 25, 1998, motion to vacate or modify his sentence under 28 U.S.C. § 2255 and June 1, 1999, supplemental motion.  Plaintiff opposed the motion August 4, 1999, and defendant replied October 21, 1999, and filed a supplemental brief October 5, 2000.  For reasons stated herein, the court recommends defendant's motions be denied.

Procedural Background.

    Defendant was convicted in 1994 of conspiring between 1987

and 1992 with co-defendants Boyd and Jiminez and others to manufacture methamphetamine and possess methamphetamine with intent to distribute it and of possessing ephedrine, a "listed chemical," on December 26, 1989, with the intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(d)(1) (Counts one and six of the May 21, 1993, superseding indictment).  C.R. 146.  This court sentenced defendant to concurrent terms of 262 months incarceration on count one and 120 months on count six.

Defendant appealed, arguing (1) the conviction on count one required reversal because Boyd, an alleged co-conspirator, was acquitted; (2) the court abused its discretion by excusing a juror without "just cause" after deliberations had begun; (3) the prosecutor committed <u>Griffin</u>[1] error by commenting upon defendant's failure to testify during closing argument; (4) the prosecutor improperly vouched for the credibility of the government witness, Stillwell; (5) the court abused its discretion by refusing to sever defendant's trial from Boyd's; (6) the court gave the jury an erroneous conspiracy instruction; (7) the court failed to give a unanimity instruction although jury confusion required one; (8) trial counsel provided ineffective assistance by failing to request proper unanimity and conspiracy instructions; and (9) the cumulative impact of these errors deprived defendant of a fair trial.

---

[1]  See Griffin v. California, 380 U.S. 609, 615 (1965); also see 18 U.S.C. § 3481.

1    The conviction was affirmed November 7, 1996.  The court of

2    appeals found that the trial testimony of Stillwell, Hixson, Jay

3    Matlock, McClelland, Mynhier and Sacchetti demonstrated defendant

4    conspired with Jiminez, who is a fugitive, and with several

5    unindicted coconspirators.   Memorandum at 2.  The court

6    determined <u>Griffin</u> error was harmless beyond a reasonable doubt,

7    given the overwhelming evidence at trial that there was a

8    conspiracy.  <u>Id</u>.  The court continued:

> The record shows that Stillwell, Hixson, Jay Matlock,
> McClelland, Mynhier, and Sacchetti all testified as to
> Matlock's role in the conspiracy.  Moreover, there was
> a great deal of physical evidence corroborating their
> claims, including large quantities of ephedrine,
> phosphorous, and isopropyl alcohol, drug manufacturing
> equipment, and methamphetamine, seized from property
> that all witnesses identified as central to the
> conspiracy, and which Matlock owned and leased to other
> coconspirators.

15   <u>Id</u>. at 4.  The court of appeals found this court properly

16   instructed the jury regarding the elements of the conspiracy, and

17   did not err in refusing to give defendant's  proposed

18   instructions.  <u>Id</u>. at 7.  Since the court of appeals held that

19   the instructions given by the court were proper, it also found

20   that defendant could not meet either prong of the <u>Strickland</u>

21   test."  <u>Id</u>. at 8.

22   <u>Governing Legal Standards</u>

23   Absent exceptional circumstances, a matter decided adversely

24   on direct appeal from a conviction cannot be relitigated on a

25   section 2255 motion.  <u>United States v. Scrivner</u>, 189 F.3d 825

26   (9th Cir. 1999), <u>citing</u> <u>Odom v. United States</u>, 455 F.2d 159 (9th

Cir. 1972); <u>United States v. Redd</u>, 759 F.2d 699, 701 (9th Cir.
1985); <u>United States v. Currie</u>, 589 F.2d 993, 995 (9th Cir.
1979); <u>see also Davis v. United States</u>, 417 U.S. 333, 342 (1974)
(court will not reconsider an issue already decided on direct
appeal absent changed circumstances of fact or law); <u>Sanders v.</u>
<u>United States</u>, 373 U.S. 1, 8 (1963); <u>Taylor v. United States</u>, 798
F.2d 271, 273 (7th Cir. 1986).

Further, a section 2255 movant cannot challenge non-
constitutional sentencing errors if such errors were not
challenged in an earlier proceeding. <u>United States v. Mullen</u>, 98
F.3d 1155 (9th Cir. 1996), <u>citing United States v. Schlesinger</u>,
49 F.3d 483, 485 (9th Cir. 1995); <u>United States v. Keller</u>, 902
F.2d 1391, 1393 (9th Cir. 1990). Issues not challenged in
objections made in the trial court or before the court of appeals
are waived. <u>Id.</u> Computational errors in a pre-sentence report
do not give rise to a constitutional issue. <u>Id.</u>

A defendant procedurally defaults section 2255 claims by not
raising them on direct appeal, unless he can show cause and
prejudice or actual innocence. <u>United States v. Ratigan</u>, 351
F.3d 957 (9th Cir. 2003), <u>citing Bousley v. United States</u>, 523
U.S. 614 (1998); <u>see also United States v. Skurdal</u>, 341 F.3d 921
(9th Cir. 2003), <u>citing United States v. Johnson</u>, 988 F.2d 941,
945 (9th Cir. 1993). To demonstrate "cause," he must show that
"some objective factor external to the defense" impeded him from
raising the claim earlier. <u>Id.</u>, <u>quoting Murray v. Carrier</u>, 477
U.S. 478, 488 (1986). Ineffective assistance of appellate

counsel is "cause" for a procedural default.  Id.  But defendant
must show his appellate counsel's performance was
constitutionally deficient and that it was prejudicial to his
defense.  Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997),
citing Strickland v. Washington, 466 U.S. 668 (1984).  If
defendant fails to establish either prong of Strickland, the
court need not examine the other prong.  Id.  Defense counsel
does not have a constitutional duty to raise all nonfrivolous
issues.  Id. citing Miller v. Keeney, 882 F.2d 1428, 1434 n.10)
("A hallmark of effective appellate counsel is the ability to
weed out claims that have no likelihood of success, instead of
throwing in a kitchen sink full of arguments with the hopes that
some argument will persuade the court.")

Factual Background

The evidence presented against defendant at trial showed
that January 27, 1987, defendant bought four kilograms of
ephedrine (a precursor chemical for manufacturing
methamphetamine) and one kilogram of Vitablend (a cutting agent)
at Grau-Hall Scientific Company in Sacramento (Grau-Hall).  RT
58-59, 62, 89, 90, 156, 173, 2007-08.  A police officer stopped
defendant's vehicle and seized the ephedrine and Vitablend.  RT
65, 67.  February 11, 1987, defendant bought five kilograms of
ephedrine and two and one half gallons of ethyl ether (a solvent)
at Grau-Hall.  RT 155-57.  February 27, 1987, defendant purchased
ten kilograms of ephedrine at Grau-Hall.  In the spring of 1987
defendant bought triple-neck flasks at Sierra Chemical in

Sacramento.  RT 1668-70.  The same year, defendant bought a large
cylinder of hydrochloric gas at Sierra Chemical (RT 1679-80) and
taught Herbert Stillwell to perform several steps in the process
of manufacturing methamphetamine.  RT 1671-75.  Defendant
repeatedly advised Stillwell to hide the methamphetamine in
defendant's yard.  RT 1675-77.  Stillwell saw others "gas off"
methamphetamine in a van in defendant's yard.  RT 1689-90.
Stillwell once "gassed off" methamphetamine with defendant at
defendant's residence, producing a pound and a half of
methamphetamine to which they added "cut."  RT 1691.  Stillwell
was arrested for manufacturing methamphetamine September 16,
1987, and defendant arranged to pay Stillwell's bail and
attorney's fees.  RT 748, 1739-44, 1750.

December 17, 1989, defendant paid $8,000 for 25 kilograms of
ephedrine and arranged to have it shipped to his home in Yuba
City.  RT 103-04, 108-15, 135, 146, 2009.  A federal agent
disguised as a delivery driver delivered the ephedrine to
defendant and then seized it.  RT 193, 200-03, 244, 247.

Bruce Hixson met defendant and Boyd in late July 1990 when
he purchased two pounds of methamphetamine from them.  RT 1384-
86.  During Hixson's association with defendant, defendant
occasionally paged Hixson.  RT 1403.  August 11, 1990, Hixson was
arrested on his way to Yuba City to buy methamphetamine from
defendant.  RT 1396-97.  The arresting officer seized from
Hixson's car 64 one-half-ounce bottles of Vitablend, a scale,
$26,732 cash, a recipe to manufacture methamphetamine, a handgun

1 and a pager.  RT 702-11, 715-25, 1395-1400.  The pager sounded

2 during the search and displayed defendant's telephone number.  RT

3 725-26.  The officer called the number, identified himself as

4 "Bruce" and a female told him, "Charlie wants you to meet him at

5 the same location."  RT 726.

6      Hixson bought methamphetamine from defendant and Boyd at

7 2680 Highway 20 (a property defendant told Hixson defendant

8 owned) at least 30 times.  In 1991 Hixson's total purchases

9 amounted to 150 pounds.  RT 1418, 1426, 1429.  On one occasion in

10 March or April 1991, Hixson purchased about two pounds of

11 methamphetamine from defendant at that site.  RT 1408-12.  Hixson

12 brought to that address, on separate occasions, nicotinamide (a

13 cutting agent), hydriodic acid, hydrochloride gas and a scale.

14 RT 1454-55.  He once saw blue gas fumes coming from the barn and

15 a bluish smoke cloud covering the area and associated them with

16 the use of hydrochloride gas in the manufacture of

17 methamphetamine.  RT 1456-57.  He then saw defendant, Boyd and

18 Stillwell come out of the barn.  RT 1456-57.  A few hours later,

19 he picked up six pounds of raw, wet methamphetamine from that

20 site.  RT 1457-59.  In December 1991, defendant and Boyd visited

21 Hixson in jail and told him they had 90-99 pounds ready for him

22 when he was released.  RT 1442-45.

23      Terry Mynhier, defendant's brother-in-law, began selling

24 methamphetamine in the spring of 1991 and defendant was his

25 source of supply.  RT 1036.

26      May 6, 1991, Boyd purchased a kilogram of red phosphorus

from Chemicals for Research and Industry.  RT 831-35.

In 1991, David Lindsay bought two 15-gallon containers of trichlorotrifluoroethane (a solvent) at defendant's behest, paying $865.35 cash.  RT 2067-74.

January 17, 1992, federal agents searched the trailer, barn and adjacent field at 2680 Highway 20.  RT 284-91.  In the field they found and seized 3444 grams of red phosphorous, 12 pounds of ephedrine, 11 gallons of isopropyl alcohol, an empty five-gallon container labeled "trichlorotrifluorethane," a triple-beam scale, a substantial amount of nicotinamide, zip-lock bags and a three-foot length of ABS pipe with end caps, containing 556 grams of methamphetamine.  RT 292-97, 300-29, 587-91.  In the barn, agents found and seized two sun-tea jars with spigots, which could be used as separators.  RT 299-300.  From the residence agents seized documents including receipts for some of the items found in the field.  RT 330-37, 344-48.

January 21, 1992, agents searched Boyd's property at 2679 Walnut Avenue in Hallwood and seized 36.5 pounds of methamphetamine buried in the ground inside lengths of ABS pipe similar to that found at 2680 Highway 20.  RT 380-91, 591-99.

January 22, 1992, agents seized $52,715 in cash buried in defendant's backyard.  RT 530-32.  The same day, agents seized cooking pots and a fish bowl with ephedrine residue and a bottle of ephedrine from Lindsay's trailer on a property where defendant and Boyd's business, B&C Moulding, was located.  RT 508-13, 599-605, 2071-74, 2098.

1   <u>Defendant's § 2255 Claims</u>

2        Defendant's motion presents five main claims not already

3   rejected on appeal: (1) that defendant's statutory and

4   constitutional rights to a speedy trial were violated; (2)

5   defendant was denied due process due to a duplicative and

6   multiplicitous indictment, improperly joined parties,

7   insufficient evidence, constructive amendment and unanimity

8   problems; (3) defendant was denied a fair trial because of

9   prosecutorial misconduct including use of perjured testimony and

10  improper closing argument; (4) the court improperly calculated

11  defendant's sentence under the guidelines and his sentence

12  violated his ex post facto clause guarantee; and (5) defendant

13  was denied effective assistance of trial and appellate counsel.[2]

14  <u>Speedy Trial Rights</u>

15        Petitioner contends his speedy trial rights were violated.

16        The speedy trial statute provides defendants must be brought

17  to trial within 70 days, although a court may exclude identified

18  periods of delay from the calculation if it makes that the ends

19  of justice served by the delay outweigh the best interest of the

20  public and defendant to a speedy trial.  <u>See</u> 18 U.S.C. §

21  3161(h)(8).  Here, 525 days elapsed between defendant's

22  arraignment and trial.  The court granted numerous "ends of

23

24        [2]  The following claims in the pending motions were already raised and
     rejected on appeal, and for that reason are not addressed: error in failing to
25  sever defendant's trial from Boyd's; improper jury instructions on conspiracy
     and unanimity; prosecutorial misconduct in vouching for a government witness;
26  and <u>Griffin</u> error.

9

justice" continuances, and the written record does not reflect
the requisite findings were made.  However, there is no need to
review hearing transcripts to see if findings were made orally,
because defendant waived his statutory speedy trial claims by
failing to move to dismiss before trial.  See United States v.
Brickey, 289 F.3d 1144, 1150 (9th Cir. 2002) ("failure of the
defendant to move for dismissal prior to trial. . . shall
constitute a waiver of the right to dismissal under the [Speedy
Trial Act]") quoting 18 U.S.C. § 3262(a)(2); see also United
States v. Rodriguez-Preciado, 399 F.3d 1118 (9th Cir. 2005).

    To the extent defendant argues counsel provide ineffective
assistance by waiving defendant's speedy trial rights, defendant
fails to claim the waiver was without his consent and establishes
neither prong of the Strickland test.  See United States v.
Asubonteng, 895 F.2d 424 (7th Cir. 1990) (counsel's performance
was reasonable when he waived speedy trial rights because of need
to prepare a defense, and appellant failed to show prejudice by
explaining how the delay unfavorably affected the trial's
conclusion).  Even if defendant had moved to dismiss,
successfully, such dismissal would have been without prejudice to
the government obtaining a new indictment, in light of the
seriousness of the case, the lack of bad faith by the government
concerning delay, and the public interest in the administration
of justice to enforce drug laws.  See 18 U.S.C. § 3162 (a)(2).

    Turning to the constitutional speedy trial question, the
court applies a four-part test to determine when government delay

has abridged a defendant's Sixth Amendment right to a speedy trial. McNeely v. Blanas, 336 F.3d 822 (9th Cir. 2003), citing Barker v. Wingo, 407 U.S. 514, 530 (1972). The factors to consider include; (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of the right to speedy trial; and (4) the prejudice caused by the delay. Id. "Failure to assert the right [at trial] will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532.

The 18-month delay between petitioner's arrest and trial is sufficient to trigger the speedy trial inquiry. See United States v. Beamon, 992 F.2d 1009, 1013 (9th Cir. 1993) (delay of 17 to 20 months was presumptively prejudicial). The record demonstrates the delay was attributable to the tactical decisions of defense counsel and their need to prepare the defense of a complex case, so defendant's speedy trial argument is not bolstered. McNeely, 336 F.3d at 827. The third factor favors the government; defendant did not assert his right to a speedy trial even though he was present in court each time delay was granted. Defendant offers nothing to suggest the delay prejudiced him in any manner. Barker, 407 U.S. at 532 (defendant might show the delay harmed the interests the speedy trial right was designed to protect--preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the accused, and limiting the possibility the defense will be impaired). Defendant was free on bond the final nine months of the pre-trial

1  period and his failure to object to continuances suggests the

2  delay caused him no undue anxiety.  There is no showing the delay

3  impaired the defense.  Considering all of the relevant factors,

4  the court concludes defendant's constitutional speedy trial right

5  was not violated.

6  <u>Duplicative and Multiplicitous Indictment</u>

7        Defendant argues count one of the superseding indictment

8  charged him with two separate crimes--conspiring to manufacture

9  methamphetamine and conspiring to possess methamphetamine with

10 intent to distribute it--and this caused prejudice under the

11 Fifth Amendment Due Process Clause because the jury convicted him

12 of count one without determining unanimously beyond a reasonable

13 doubt which crime he committed.

14       The Ninth Circuit has held that the government may charge a

15 conspiracy in the conjunctive and prove in the disjunctive.

16 <u>United States v. Abascal</u>, 564 F.2d 821, 831 (9th Cir. 1977) ("The

17 government may charge in the conjunctive form that which the

18 statutes denounce disjunctively, and evidence supporting any one

19 of the charges will support a guilty verdict.")  Nor did the

20 court err in instructing the jury in the disjunctive, adopting

21 the language of the statute rather than the conjunctive wording

22 of the indictment.  <u>United States v. Bettencourt</u>, 614 F.2d 214,

23 219 (9th Cir. 1980); <u>see</u> <u>also</u> <u>United States v. Miller</u>, 471 U.S.

24 130, 135 (1985) (defendant may be convicted on evidence showing a

25 narrower scheme than that alleged in the indictment).

26       Defendant also argues the indictment was "multiplicitous."

Multiplicity occurs when the indictment charges the same defendant with the same offense in more than one count.  United States v. DeRosa, 670 F.2d 889 (9th Cir. 1982).  The primary test for determining whether two counts in an indictment charge the same offense is the "same evidence" test stated in Blockburger v. United States, 284 U.S. 299 (1932).  Where a defendant is convicted of multiplicitous charges, the double jeopardy clause is implicated.  See Williams v. Warden, 422 F.3d 1006 (9th Cir. 2005) (double jeopardy principles are violated unless each count requires proof of an additional fact which the other does not).

Here, the charges that defendant was convicted of are not multiplicitous.  Conspiracy to manufacture methamphetamine requires proof of different elements than possession of ephedrine with intent to manufacture methamphetamine.  Whether count three of the indictment was multiplicitous to count one is irrelevant because defendant was acquitted of count three.

Defendant contends his conviction for conspiracy is unsupported by sufficient evidence.  I find that the conviction is adequately supported by the evidence outlined above.

Defendant further claims "variance," which occurs when the evidence adduced at trial proves facts materially different from those alleged in the indictment.  He argues the evidence showed the existence of two conspiracies, one lasting from 1987 through Stillwell's incarceration in the spring of 1988, the second lasting from Stillwell's September 1989 release through his arrest in January 1992.

1    Evidence at trial was sufficient to support the jury's

2 conclusion that a single conspiracy to manufacture

3 methamphetamine existed between Matlock, Stillwell and others,

4 lasting from 1987 through 1992.  See United States v. Bibbero,

5 749 F.2d 581, 587 (9th Cir. 1984) (factors to consider in

6 distinguishing single from multiple conspiracies include the

7 nature of the scheme; the identity of the participants; the

8 quality, frequency and duration of each conspirator's

9 transactions; and the commonality of time and goals).  Here, the

10 government proved the existence of a single overarching scheme to

11 manufacture methamphetamine using ephedrine, red phosphorous and

12 hydriodic acid.  The identity of the participants was fairly

13 constant (Matlock and Stillwell were involved from beginning to

14 end, with a hiatus for Stillwell while he was incarcerated).

15 Stillwell's main function was to assist Matlock in the

16 manufacturing process.  David Lindsay played a role in purchasing

17 chemicals and extracting ephedrine from tablets.  Matlock made

18 chemical purchases and manufactured methamphetamine, then later

19 trained and supervised others to perform these tasks.  Evidence

20 of Matlock's position of responsibility shows he joined the

21 conspiracy with knowledge of its purpose.  Evidence defendant

22 arranged to pay Stillwell's bail and attorney fees supports a

23 conclusion Stillwell did not leave the conspiracy.

24    Continuous activity is not required for a single conspiracy,

25 and a suspension of activities does not necessarily divide one

26 conspiracy into two.  United States v. Little, 753 F.2d 1420,

1448 (9th Cir. 1985) ("A conspiracy is presumed to continue until

there is an affirmative evidence of abandonment, withdrawal,

disavowal or defeat of the purposes of the conspiracy.")  The

test is "whether any rational trier of fact could have found a

single conspiracy on the evidence presented."  Id.  Here, a

rational juror could have concluded the initial conspiracy

continued during Stillwell's incarceration.

     Defendant's claims concerning duplicativeness, multiplicity,

variance and sufficiency of the evidence fail.

Prosecutorial Misconduct

     Defendant claims the prosecutor committed misconduct by

suborning perjury from Stillwell.  Stillwell pleaded guilty to

manufacturing 36 pounds of methamphetamine and testified against

defendant as a condition of that plea agreement.  On cross-

examination, Stillwell testified that the facts underlying his

plea agreement never occurred and that his attorney and the

prosecutor knew that when they arranged the plea.  RT 1839.

     Perjury occurs when a witness testifying under oath or

affirmation "gives false testimony concerning a material matter

with the willful intent to provide false testimony."  United

States v. Duncan, 507 U.S. 87, 94 (1993).  To show perjury,

defendant must establish the prosecutor knowingly and

intentionally used perjured testimony to secure a conviction.

Stein v. United States, 390 F.2d 625, 626 (9th Cir. 1968).

     That Stillwell's guilty plea may have been based upon a

false stipulation of facts does not amount to offering material

1   false testimony to obtain defendant's conviction in this case.

2   At any rate, the jury knew of the discrepant testimony.

3   Defendant's claim the prosecutor suborned Stillwell's perjury has

4   no merit.

5       Defendant also seeks reversal based on the prosecutor's

6   comment to the jury: "if you're not going to find these two

7   defendants guilty, you better let me know so I can get out of

8   town."  Defendant declares the prosecutor made this comment,

9   although it was not transcribed.  Assuming the comment was made,

10  defendant still has not established a violation of his

11  constitutional rights.  Darden v. Wainwright, 699 F.2d 1031, 1036

12  (1983); Donnely v. De Christoforo, 416 U.S. 637, 644 (1974) (to

13  establish a constitutional claim, defendant must show

14  prosecutor's improper comment so infected the trial with

15  unfairness as to make the resulting conviction a denial of due

16  process).

17      This comment suggested the jury should convict defendant,

18  possibly despite doubts about his guilt, to safeguard the

19  prosecutor from retaliation by defendant if released and implied

20  the prosecutor knew defendant's character provoked a well-founded

21  fear of physical retaliation, despite the charges were all

22  related to drug trafficking.  This court condemns the statement,

23  if it was made, but finds the evidence of guilt so overwhelming

24  as to find no prejudice.  For the same reason, defendant's other

25  contentions of prosecutorial misconduct based on comments or

26  argument to the jury also must be rejected.

1    The fact Boyd was acquitted further shows the jury was not

2  inflamed by prosecutorial comments and argument or Stillwell's

3  recanted testimony regarding his state court guilty plea.

4  Defendant's claims of prosecutorial misconduct fail as a matter

5  of law, and no evidentiary hearing is required because there are

6  no disputed facts and defendant's claim fails as a matter of law.

7  Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992).

8  Whether the District Court Erred in Determining Defendant's

9  Sentence

10    Defendant presents several arguments that his sentence was

11  improper.

12    Non-constitutional claims have been waived by plaintiff's

13  failure to raise them at sentencing and in his direct appeal and

14  generally cannot be raised in a section 2255 motion.  See United

15  States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1995); United

16  States v. McMullen, 98 F.3d 1155, 1157 (9th Cir. 1996).

17    Defendant's sole constitutional claim is that he was

18  sentenced in violation of the ex post facto clause, because he

19  received a term of 262 months based on conduct that would have

20  supported a maximum sentence of 120 months in 1989.

21    A defendant is sentenced according to the United States

22  Sentencing Guidelines (USSG) manual in effect at the time of

23  sentencing, unless doing so would implicate ex post facto

24  concerns by retroactively increasing the punishment for specified

25  conduct.  United States v. Mooneyman, 938 F.2d 139, 140 (9th Cir.

26  1991); 18 U.S.C. § 3553(a)(4).  Here, amendments to section

2D1.1(c) of the guidelines effective November 1, 1989, proscribed a base offense level of 36 for a quantity of methamphetamine between ten KG and 30 KG.  Completely disregarding any ephedrine seized in 1987, it is beyond dispute that in December of 1989 agents seized from defendant 25 KG of ephedrine, which converts at a 50% ratio to 12.5 KG methamphetamine.  Annual amendments made between 1989 and defendant's sentencing date in the spring of 1995 did not alter the rule that 12.5 KG of methamphetamine earned a base offense level of 36.  Thus, the court's decision to use the version of the USSG in effect at sentencing had no impact on the length of defendant's term.  The ex post facto clause is not implicated.

Defendant argues he should have been sentenced under 2D1.11, enacted in 1993, regarding listed chemicals, which would have yielded a base offense level of 28 for his possession of the 25 KG of ephedrine.  Section 2D1.11 provides that section 2D1.1 should be used instead of section 2D1.11 when the defendant is convicted of a conspiracy to manufacture methamphetamine with intent to distribute.  See United States v. Myers, 993 F.2d 713 (9th Cir. 1993) (where defendant is convicted of a conspiracy to manufacture methamphetamine, section 2D1.1 should be used instead of 2D1.11 in calculating the sentence).  The court properly sentenced defendant under section 2D1.1.

Defendant attempts to avoid waiver of his non-constitutional claims by styling them as claims he received constitutionally deficient assistance of counsel.  Assuming arguendo counsel erred

1  in failing to raise objections at sentencing, defendant clearly

2  suffered no prejudice.  Evidence against him was overwhelming.

3  The government seized 38 pounds of methamphetamine and

4  defendant's coconspirators Hixson and Mynhier testified the

5  conspiracy supplied them with 170 pounds of the drug in 1991.

6  This quantity would have earned defendant a base offense level of

7  38, adding years to his sentence.  The court's generosity, which

8  flowed from a stipulation by counsel, resulted in a shorter term.

9  The stipulation reflected numerous concessions made by the

10 government in defendant's favor.  The court also sentenced

11 defendant at the bottom of the guideline range for his total

12 offense level.  Had defendant's attorney objected at sentencing

13 on the grounds defendant now argues, the government would have

14 sought -- and likely obtained -- a longer sentence.

15 <u>Ineffective Assistance of Counsel</u>

16     Defendant claims his counsel's representation was

17 constitutionally deficient, on several grounds.  Claims trial

18 counsel was ineffective in failing to assert speedy trial rights

19 and object at sentencing are addressed and rejected above.

20     Counsel was not ineffective in failing to object to

21 prosecutorial comment or jury instructions on conspiracy and

22 unanimity, because the comments were non-prejudicial and the

23 instructions given were proper.  Counsel was not remiss in

24 failing to attack the indictment as duplicative and

25 multiplicitous, because it wasn't.  Counsel made no error in

26 omitting arguments concerning perjury, because there was none, or

variance, because the government proved a single conspiracy.

Defendant has not established he received ineffective assistance of trial counsel.

Ineffective Assistance of Appellate Counsel

Defendant finally points the finger at appellate counsel to excuse his procedural default of claims by failing to raise them on appeal.  Appellate counsel raised numerous claims on defendant's behalf, and defendant fails to establish counsel omitted any claim that would have won him relief.  Performance of appellate counsel met the constitutional standard.  Pollard v. White, 119 F.3d 1430.

Singleton Claim

In his August 10, 1998, "Notice and Correction of Typographical Error [etc.]," defendant attempts to plead a claim based on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998) (government's offer to reduce sentence for government witness was a bribe under federal anti-bribery statute).  That decision was vacated after en banc hearing, and its reasoning has never been adopted by the Ninth Circuit or the United States Supreme Court.

Based on all of the foregoing, the court hereby recommends defendant's motions to modify or vacate his sentence be denied.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these findings and recommendations are submitted to the United States District Judge assigned to this case.  Written objections may be filed within 20 days.  The document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."
The district judge may accept, reject, or modify these findings
and recommendations in whole or in part.

     Dated:  February 7, 2006.

                            /s/ Peter A. Nowinski
                            PETER A. NOWINSKI
                            Magistrate Judge